R. J. BAUER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bauer v. Commissioner
Docket No. 3609-71.
United States Tax Court
T.C. Memo 1973-111; 1973 Tax Ct. Memo LEXIS 176; 32 T.C.M. (CCH) 496; T.C.M. (RIA) 73111; May 17, 1973, Filed R. J. Bauer, pro se. Clarence F. Frazier, Jr., for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The respondent determined a deficiency of $2,140.42 in the petitioner's Federal income tax for 1966. The issues to be decided in this case are *178 whether the petitioner, a worker on construction projects, was away from home for tax purposes, how much per diem he received during the year, and whether he is entitled to deduct any unreimbursed automobile expenses. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioner, R. J. Bauer, was a resident of Fort Collins, Colorado, at the time his petition was filed in this case. He filed a joint Federal income tax return for the year 1966 with the director of international operations, Washington, D.C. On such return, the petitioner set forth as his address the address of his father which he used as his mailing address. Also, on such return, he signed the name "Sandra L. Bauer," intending it to be the signature of his purported second wife, and not that of his first wife, who filed an individual income tax return for the year 1966 solely in her own name. The petitioner married Sandra L. Bauer in 1959, and one daughter, Tracey L. Bauer, was born from this marriage. From 1961 to 1963, the petitioner and his family resided in Canoga Park, California, where he worked as an x-ray technician-film processor. In 1963, the petitioner *179 and his family moved to Daytona Beach, Florida, where he began working for the United States Testing Company at Cape Kennedy. In 1964, the petitioner and his family moved to Coral Gables, Florida, where he was engaged by Pittsburgh Testing as a nondestructive test supervisor in the construction of power plants being erected in Cocoa and Fort Lauderdale, Florida. A nondestructive tester tests castings and fittings through the use of radioactive isotopes and special film. As a result of such procedure, an object tested is not destroyed in the course of an examination. In March 1965, the petitioner moved to the Baltimore, Maryland, area and began working for Ebasco Services, Incorporated (Ebasco), on a power plant project nearby. However, his family did not accompany him, as 2 weeks prior to such move, the petitioner and his wife, Sandra L. Bauer, separated by mutual consent. She and Tracey moved to Eugene, Oregon, where they continued to reside through 1966. The petitioner sent no money for the support of his wife and did not conhabit with her during their separation. On January 9, 1967, Sandra L. Bauer obtained a divorce from the petitioner. The petitioner worked at the project *180 as a nondestructive test supervisor until March 15, 1966. Upon completion of such project, he moved to Colorado City, Texas, to work as a nondestructive test supervisor at another power plant being constructed by Ebasco. In Colorado City, the petitioner lived in a hotel which was located approximately 6 miles from the jobsite. At the jobsite, the petitioner's work trailer, in which the radioactive isotopes were stored, was approximately three-quarters of a mile from the most distant spot at which tests were conducted. It was the petitioner's practice to use his automobile to transport the radioactive isotope, which was inside a 75-pound lead container, and the film, which measured 17 feet in length, from his work trailer to the test site. He generally conducted 2 or 3 tests in an afternoon, and accordingly, made 2 to 3 trips from his trailer.On occasion, he was required to conduct additional tests during off hours, and so he made additional trips from the hotel to the jobsite. The petitioner's employer did not require use of an automobile for the onsite trips from the work trailer to the test site. However, when use of the petitioner's automobile was required for other tasks, *181 the petitioner was reimbursed at the rate of 8 cents per mile. The petitioner also received an allowance of $10 per day in addition to his salary for 82 days while employed at the Colorado City project. In late March 1966, the petitioner met Sandra L. Baker, with whom he began cohabiting mostly on weekends. She and her two sons by a previous marriage lived with her mother in Dallas, Texas. In 1966, the older son was approximately 4 years old, and the younger son was under 2 years old.Either the petitioner left Colorado City on Friday evenings to visit Sandra L. Baker in Dallas, or when he was required to work on Saturday, she visited him in Colorado City. On such weekends, he gave her money to reimburse her mother for rent and groceries and to help out with the children. At the completion of the Colorado City project in June 1966, Ebasco transferred the petitioner to a project in Dallas. While in Dallas, he resided in the home of Sandra L. Baker's mother along with Sandra and her two sons. Within approximately 2 weeks of his arrival in Dallas, the petitioner left for a 2-week trip to New York City, at his employer's request, in connection with a reassignment to Japan. He *182 drove to and from New York. Upon his return to Dallas, the petitioner hired and trained his replacement on the Dallas project for for his employer. At the end of 2 weeks, he drove to Los Angeles, California, the point of embarkation for Japan, and while there, vacationed for 2 weeks with his father. From Los Angeles, the petitioner flew to Tokyo, Japan, and arrived on August 13, 1966. The petitioner contracted to work in Japan for 3 years as a welding engineer at a jobsite in Tsuruga, Japan. Under such contract, he was to receive an annual salary of $10,000, a premium for overseas service, and certain other fringe benefits. Prior to his arrival in Tsuruga, the petitioner was assigned to a project in Tokyo, and during such assignment, which was intended to last 3 months, he was to receive an allowance of $25 per day, payable in yen, in addition to his salary. His assignment in Tokyo lasted longer than expected, and by January 1, 1967, he still had not arrived in Tsuruga. Late in December 1966, Sandra L. Baker and her two sons flew to Japan at the expense of the petitioner's employer. Sandra L. Baker flew at full fare, the elder son flew at half fare, and the younger son *183 flew at 10 percent of full fare. Upon her arrival, it was discovered that the petitioner's employer would not assume responsibility for Sandra L. Baker and her sons unless she and the petitioner were formally married. Accordingly, the petitioner and Sandra L. Baker went through a formal ceremony, even though both knew that Sandra L. Bauer had not, at that time, obtained a divorce. Such ceremony was registered with United States authorities. Sandra L. Baker and her two sons returned to the United States in the early part of January 1967, and she divorced the petitioner in March 1967. The petitioner returned to the United States in September 1967. For his services in Japan, the petitioner's salary in 1966 amounted to $4,430.24. In addition, while in Japan, he received a living allowance in the amount of $3,500.00 in 1966. In his notice of deficiency, the respondent determined that the petitioner received $4,430.24 in wages for services in Japan, $3,500.00 of income in the form of per diem allowances while in Japan, $2,120.00 of income in the form of per diem allowances while in the United States, and $720.00 of income representing the value of transportation furnished by the *184 petitioner's employer for Sandra L. Baker and her 2 sons. In addition, the respondent denied deductions of $5,175.00 claimed as meals and lodging expense while in Japan and $1,098.00 claimed as automobile expense arising from the petitioner's moves to Colorado City from Baltimore, to Dallas from Colorado City, to and from New York City from Dallas, for transporting his test materials at the Colorado City jobsite, and for the additional trips to the jobsite. Finally, the respondent allowed a deduction of $71.55 representing a moving expense deduction for the move to Los Angeles, the point of embarkation to Japan, which was not claimed by the petitioner. OPINION In this case, we must decide several issues: whether the petitioner was away from home for tax purposes during 1966; how much he received as a per diem allowance while he was working in the United States and while he was working in Japan in 1966; how much he received as wages while he was working in Japan; whether he incurred any unreimbursed automobile expenses which he is entitled to deduct; and whether he is taxable on amounts which his employer paid as air far for Sandra L. Baker and her 2 sons. The petitioner contends *185 that throughout 1966 he was away from home, and therefore, he is entitled to a deduction for the per diem allowances received in the United States and Japan and also for the cost of meals and lodging incurred in Tokyo, which was $5,175.00. In his petition, he asserted that while in the Baltimore area, his home was with Sandra L. Bauer on the West Coast; that while in Colorado City, it was with Sandra L. Baker in Dallas; and that while in Tokyo, it was in Tsuruga. He also claims that his 3-year assignment in Japan was for a temporary period. The respondent contends that the petitioner was never away from home and is, therefore entitled to neither deduction. Accordingly, it is the respondent's position that the per diem allowances were merely additional compensation for personal expenses which are not deductible. See sec. 262, Internal Revenue Code of 1954; [1]Commissioner v. Flowers, 326 U.S. 465 (1946); Darrell Spear Courtney, 32 T.C. 334 (1959). Similarly, he contends the cost of meals and lodging was personal in nature, and therefore, such expense was not deductible under section 262. In addition, the respondent contends that even *186 if the petitioner were away from home in Tokyo, the excess of expenses over per diem is not deductible because of the absence of substantiation, as required by section 1.274-5(e) of the Income Tax Regulations. In our view, the petitioner was never away from home in 1966, and therefore, he is entitled to neither deduction.Accordingly, we do not reach the respondent's alternative argument. Personal living expenses are ordinarily nondeductible. Sec. 262. However, section 162(a) (2) allows a taxpayer to deduct certain living expenses paid or incurred while away from home in the pursuit of his trade or business. The purpose of allowing such deduction is "to mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional duplicate living expenses." Ronald D. Kroll, 49 T.C. 557, 562 (1968); see Rosenspan v. United States, 438 F. 2d 905, 912 (C.A. 2, 1971), cert. denied *187 404 U.S. 864 (1971); James v. United States, 308 F. 2d 204, 207 (C.A. 9, 1962); Truman C. Tucker, 55 T.C. 783, 786 (1971); Lloyd G. Jones, 54 T.C. 734, 740 (1970), affd. 444 F. 2d 508 (C.A. 5, 1971); Kenneth H. Hicks, 47 T.C. 71 (1969). If a taxpayer cannot show that he had both a permanent and temporary abode in the year at issue, he is not entitled to the deduction.See Rosenspan v. United States, supra; James v. United States, supra; Kenneth H. Hicks, supra; Henry C. Deneke, 42 T.C. 981 (1964); Charles E. Duncan, 17 B.T.A. 1088 (1929) (all of which concerned salesman who had no permanent place of abode); see also Leo M. Verner, 39 T.C. 749 (1963) (engineer who maintained no abode in area from which he was transferred); Wilson John Fisher, 23 T.C. 218 (1954), affd. 230 F. 2d 79 (C.A. 7, 1956) (musician who had no abode other than wherever he worked); Moses Mitnick, 13 T.C. 1 (1949) (manager of traveling theatrical company who had no abode other than wherever a show he managed happened to be). *188 The record clearly indicates that the petitioner maintained no abode in 1966 other than at the place where he happened to be employed. In 1963, 1964, and 1965, the petitioner changed his residence with each new job, and thereafter, maintained no connection with or abode at the place from which he moved. In 1966, when the petitioner maintained his abode in the Baltimore area and was employed at a nearby power plant project, he had no connection, business or otherwise, with any other locality. Although he claimed in his petition that during such time he supported Sandra L. Bauer on the West Coast, the petitioner did not cohabit with her, and at trial, admitted that he did not support her. Accordingly, he incurred no duplicate living expenses while in Baltimore. Similarly, while in Colorado City, the petitioner maintained his abode in a hotel close to the jobsite. Although he visited, or was visited by, Sandra L. Baker on weekends, at which time the two cohabited, and although he gave her money during such visits to reimburse her mother for rent and groceries and to help out with her children, it cannot be said that the petitioner maintained an abode in Dallas. The petitioner's *189 claim that Sandra L. Baker was his common law wife is not supported by Texas law. In Texas, common law marital status is not extended to a relationship in which the putative husband has another as his living wife ( Drummond v. Benson, 133 S.W. 2d 154, 159 (Tex. Ct. Civ. App. 1939)), or in which the cohabitation is irregularly spaced even though frequent ( Walter v. Walter, 433 S.W. 2d 183, 195 (Tex. Ct. Civ. App. 1968)). The petitioner was legally married to Sandra L. Bauer through 1966, and his cohabitation with Sandra L. Baker was not continuous - it occurred mostly on weekends. In these circumstances, the bonds of common law marriage did not exist. Accordingly, the payments made by the petitioner to Sandra L. Baker can only be viewed as gratuitous, and therefore, it cannot be said that any additional or duplicate expense was incurred in maintaining an abode in Colorado City. In his petition, the petitioner claimed that he maintained an abode in Tsuruga at all times while in Japan. Thus, he contends that he was away from home while in Tokyo. At trial and in his brief, the petitioner claimed his home was in the United States and that he was away from *190 such home during his entire stay in Japan, which was temporary. Yet, it is of little import whether the petitioner viewed Tsuruga or a place in the United States as his home. In either case, his residency in Tokyo was similar to the earlier residencies in Canoga Park, Daytona Beach, Coral Gables, the Baltimore area, Colorado City, and Dallas. In each instance, the petitioner actually maintained his home in one locale until he received a new job offer or, upon completion of a project, a new assignment in a different city. Moreover, the record does not corroborate the petitioner's claims that in 1966 he maintained a home in Japan at a place other than the location of his assignment in Tokyo. On his Japanese final income tax return for 1966, the petitioner indicated that his adress was in Tokyo, not Tsuruga; and on his Federal income tax return for 1966, the United States address shown was the residence of his father and was used merely as a mailing address. Accordingly, the petitioner has failed to demonstrate that duplicate or additional expenses were incurred while in Tokyo. The respondent determined that the petitioner received $10 per diem allowances to the extent of $2,120 *191 while in the United States. At trial, the petitioner claimed he received such allowances only for 82 days while in Colorado City. He testified that he did not receive a per diem allowance while working on the Baltimore project or the Dallas project; he stated that the allowance was only paid for work on remote projects when the employer could pass on the cost of the allowance. In view of this testimony, which appears to be altogether credible, we find that the petitioner received the per diem allowance while working in the United States for only 82 days in 1966, or a total of $820. Similarly, the respondent determined that the petitioner received a $25 per diem allowances in yen to the extent of $3,500 while in Tokyo. The petitioner contends that the rate of the per diem was $25 per day until October 1, 1966, then $7 per day until the arrival of Sandra L. Baker in December, and finally $21 per day until December 31, 1966. At trial, the petitioner introduced a portion of a letter for the purposes of corroborating his contention. When questioned as to the contents of the portion not introduced, the petitioner could not or would not testify. On the other hand, the respondent *192 directs our attention to the petitioner's Japanese final individual income tax return for the year 1966, in which the petitioner shows total receipts of 1,261,461 yen. This amount was equal to approximately $3,500. The petitioner was in Tokyo from August 13, 1966, through December 31, 1966, or 140 days, and a per diem allowance of $25 per day for such period amounts of $3,500. In these circumstances, the respondent's determination has been corroborated; the petitioner has failed to meet the burden of proof. Accordingly, we uphold the correctness of the respondent's determination as to this issue. The respondent determined that the petitioner received compensation in the amount of $4,430.24 for services rendered in Japan during the year 1966. On a Form 1099 filed by his employer, such amount was shown as wages paid to the petitioner in 1966, and the parties agree in their briefs that this amount represented wages for such year. However, the petitioner contends that such wages were not actually paid to him until he returned to the United States in 1967 and that for such reason, he was not taxable on such amount in 1966. *193 As a general rule, a cash basis taxpayer recognizes and reports income upon the actual receipt of cash or its equivalent. However, a taxpayer may not deliberately turn his back upon income and thus select the year for which he will report it. Hamilton Nat. Bank of Chattanooga, Administrator, 29 B.T.A. 63 67 (1933); see also Ernest K. Gann, 31 T.C. 211, 217 (1958). Thus, unless subject to substantial limitations or restrictions, income not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. Sec. 1.451-2(a), Income Tax Regs. Whether there has been "constructive receipt" of income is a question of fact, and the burden of proof is on the petitioner. Hamilton Nat. Bank of Chattanooga, Administrator, supra at 29 B.T.A. 66; *194 Rosenberg v. United States, 295 F. Supp. 820, 822 (E.D. Mo. 1969), affd. per curiam 422 F. 2d 341 (C.A. 8, 1970). The petitioner has utterly failed to prove that the wages were not available to him. He offered no evidence as to the alleged arrangement with his employer for withholding payment of the funds until he returned to the United States. There is no proof that the funds were not subject to his withdrawal at any time. Under such circumstances, we must sustain the respondent's determination with respect to this issue. The petitioner contends that the deduction for automobile expenses which he claimed on his return for 1966 was to cover the costs of his driving from Dallas to New York City and back, the costs of operating his automobile at the jobsite in Colorado City, and the costs of moving from one jobsite to another. For a traveling expense to be deductible under section 162(a) (2), the taxpayer must substantiate his testimony with adequate records of the amount of such expense, the time and place of travel, and the business purpose of such expense. Sec. 274(d); sec. 1.274-5(b) (2), Income Tax Regs. During his trip to New York City, the *195 petitioner may have been in "travel status." However, the petitioner provided no substantiation of the automobile expenses which he claimed to have incurred. At trial, the petitioner testified that the claimed expenditure was merely an approximation. Section 274(d) contemplates that no deduction shall be allowed for a travel expense on the basis of approximations or the unsupported testimony of the taxpayer. Sec. 1.274-5(a), Income Tax Regs. Furthermore, he testified that his employer reimbursed certain automobile expenses incurred while carrying out certain duties of the business. Yet, the petitioner made no allocation as to the expenses which were reimbursed and to those which were not. Since we do not know whether the petitioner received reimbursement for the expenses of operating his automobile at the Colorado City jobsite, we need not decide whether such expenses would be deductible if not reimbursed. Section 217(a) allows a deduction for moving expenses incurred in connection with the commencement of work by the taxpayer as an employee at a new principal place of work. However, section 217(c) (2) provides in part that no deduction shall be allowed unless "during the 12-month *196 period immediately following his arrival in the general location of his new principal place of work, the taxpayer is a full-time employee, in such general location, during at least 39 weeks * * *." The petitioner remained in Colorado City from mid-March to approximately mid-June. Similarly, he remained in Dallas for, at most, 6 weeks. In both instances, he failed to remain in the general location of his new principal place of work for the required 39-week period. Thus, it is clear that the petitioner is not entitled to deduct any moving expenses in connection with his moves to Colorado City and Dallas. The petitioner contends that he is entitled to a moving expense deduction in excess of $71.55, as allowed by the respondent, in connection with the drive to Los Angeles, the point of embarkation for Japan. He claims that he should be allowed a deduction for the cost of food and lodging in addition to the automobile expense allowed by the respondent. We disagree. Although the cost of food and lodging is within the definition of moving expense (see sec. 1.217-1(b) (1), Income Tax Regs.), the petitioner introduced no evidence with respect to the amount of such expenditures. The *197 record contains no information that would shed light on the number of nights during which lodging was required, the placed at which he slept during such nights, and the food which he ate on the trip. Accordingly, the petitioner has failed to show that he is entitled to any deduction in excess of that allowed by the respondent in connection with his traveling to Los Angeles. The petitioner has also failed to prove that he is entitled to the deduction for automobile expenses which he claimed. The petitioner claims he is not taxable on the air fare provided by his employer for Sandra L. Baker and her 2 sons. He claims that if such amount is includable in his income, he is entitled to deduct it as a moving expense under section 217. He also asserts that the air fares did not constitute income of his since the tickets were given directly to Sandra L. Baker, and that in any event, the respondent has overstated the amount paid as air fare for Sandra L. Baker and her 2 sons. In the year 1966, the deduction provided in section 217(a) also included expenses incurred by an individual other than the taxpayer. Sec. 217(b) (2). However, section 217(b) (2) provided that moving expenses *198 were to be deductible only if the individual had both the former residence and the new residence of the taxpayer as his principal place of abode and also was a member of the taxpayer's household. The petitioner has failed to establish that those conditions existed with respect to Sandra L. Baker. No showing has been made that the petitioner, upon moving in with Sandra L. Baker and her mother, assumed primary responsibility for the household. Even if we assume that the petitioner continued the payments he formerly made on weekends to Sandra L. Baker while he worked in Colorado Ctiy, such payments were, at best, minimal. His stay in Dallas was only for two 2-week periods separated by a 2-week trip to New York City. There is no evidence taht the petitioner supported Sandra L. Baker after his departure for Los Angeles and Tokyo, other than when she came to Japan. In short, Sandra L. Baker and her sons appear to have been members of her mother's household for the year 1966. Accordingly, the petitioner is entitled to no deduction for their expenses of traveling to Japan. We reach this conclusion without passing on the effect of the fact that the petitioner and Sandra L. Baker were *199 not legally married. The petitioner's alternative argument is equally without merit. Whether or not the petitioner is entitled to a moving expense deduction has no bearing on the issue of whether he received income. From the testimony of the petitioner, it appears that his employer maintained a policy of providing air fare to the location of assignment for the family of its employees. The petitioner wanted Sandra L. Baker and her sons to move to Japan. When the air fare was supplied by the petitioner's employer, it was done because of the employment relationship, and the petitioner was relieved of what would otherwise have been a personal expense. It is of no consequence that those provided with air fare were not members of his household. Accordingly, the fair market value of such air fare is includable in the petitioner's gross income as compensation. Sec. 1.61-2(d), Income Tax Regs.; cf. United States v. Gotcher, 401 F. 2d 118, 124 (C.A. 5, 1968). However, we have found as fact that the cost of air fare provided the younger son of Sandra L. Baker was 10 percent of full fare. The respondent's determination was based on an assumption that the cost of air fare *200 for each son was 50 percent of full fare. Accordingly, the respondent erred in calculating the total fair market value of the fares at issue, and such error should be corrected in the Rule 50 computation. Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954. ↩