*66 OPINION.
MuedocK:
Both parties agree that the use of the installment method of reporting the profit from the sale in 1927 is proper. There is no difference between them as to any figures. The sole question is, When was the decedent in receipt of the principal and interest on the note for income tax purposes? He died before this proceeding was instituted and his testimony is not available. The note was not produced and we do not know its precise terms or the date of cancellation. However, the petitioner concedes that it was payable “ on or before ” July 7, 1930. The petitioner makes several arguments based upon an absence of proof, apparently forgetful of the fact that the proof is its burden. It must show that there is no basis for the Commissioner’s action, if the latter is to be reversed.
The petitioner argues that the savings account was not unquali-fiedly subject to the decedent’s demands upon the bank in 1929, that the account was not that of his agent, and that it was not in trust or in escrow for the decedent. We need not decide any of these questions. There was an unqualified tender of payment before the money was placed in the bank. The total amount which he accepted from the bank on January 10, 1930, was not the equivalent of the principal of the note with interest thereon to January 10, 1930. It was the principal of the note with interest thereon to October 7, 1929, plus bank interest on that total sum from October 10, 1929, to January 10, 1930. Thus, he finally accepted $68.44 less than would have been due on the note had it remained unpaid until January 10, 1930. Nicklin had no right to refuse payment in 1929. The debtor was not only willing, but it wished to pay. Apparently it was desirous of paying at all times during the remainder of 1929. At least the contrary does not appear. That which was done in lieu of actual payment into the hands of the decedent in 1929 was done without objection from Nicklin in an effort to accommodate him and to have the cash available for him pending the time when he chose to accept *67 it. Thus it seems clear that had he changed his mind at any time during the latter part of 1929 and asked for the cash, he could have had it. Furthermore, if the account in the bank belonged to him as a principal, or if he was a cestui que trust, there was obviously receipt for income tax purposes in 1929. Nor is the petitioner aided by its argument that the fund was not in escrow and could have been withdrawn by the debtor. If the debtor could have withdrawn the money, we must assume that it would have done so in order to comply with any demand of Nicklin for payment. “ It was not that the corporation would not pay, but rather that he would not receive.” John A. Brander, 3 B.T.A. 231. Thus, upon any theory that has been suggested, there was receipt in 1929 of the principal of the note with interest thereon to October 7, 1929. A taxpayer may not deliberately turn his back upon income and thus select the year for which he will report it. Cf. John A. Brander, supra; I. M. Cowell, 18 B.T.A. 997; Ella C. Loose, Executrix, 15 B.T.A. 169; William Holden, 6 B.T.A. 605; William Parris, 20 B.T.A. 320; John I. Chipley, 25 B.T.A. 1103; Security First National Bank of Los Angeles, Executor, 28 B.T.A. 289; Loose v. United States, 4 Fed. Supp. 375; Schoenheit v. Commissioner, 44 Fed. (2d) 476; affirming, on this point, 14 B.T.A. 33; Corliss v. Bowers, 281 U.S. 376, 378. Yet, that is exactly what this decedent tried to do.

Decision will he entered for the respondent.