Leo S. NIKORA, Plaintiff-Appellee, Cross-Appellant,

v.

Herbert MAYER, Defendant-Appellant, Cross-Appellee.

No. 323, Docket 24858.

United States Court of Appeals Second Circuit.

Argued April 9, 1958.

Decided July 30, 1958.

Robert E. Nickerson, Greenwich, Conn. (Arthur Rogers Ivey, Ivey, Barnum, O'Mara & Nickerson, Greenwich, Conn., on the brief), for plaintiff-appellee-cross-appellant.

Frederick E. Weinberg (Sydney C. Perrell, Stamford, Conn., Martin W. Kramer, New York City, on the brief), for defendant-appellant-cross-appellee.

Before SWAN, HINCKS and MOORE, Circuit Judges.

MOORE, Circuit Judge.

This is an appeal from a judgment in a diversity action ordering the defendant, Mayer, to convey a four acre parcel of land in the Town of Greenwich, Connecticut, to the plaintiff pursuant to the terms of a written contract. The plaintiff, Nikora, cross-appeals from the refusal of the District Court to allow compensatory and exemplary damages.

The contract was made on December 3, 1953 between plaintiff as vendee and one Alfred S. Holmes, defendant's assignor, as vendor. The purchase price was $24,160, of which $2,416 was received by Holmes the day the contract was made. The following provision in the contract, inserted at plaintiff's request, is pertinent here:

"This contract is contingent upon the party of the second part [Nikora] obtaining a first mortgage in an amount of not less than $15,000, with interest at a rate not to exceed five per cent per annum and principal to be amortized in not less than 15 years. The party of the second part agrees that he will in good faith make application for such a mortgage and use his best efforts to obtain such a mortgage. In the event that the party of the second part has not obtained such a mortgage on the above terms in 45 days from the date hereof, then this contract shall cease and terminate and the party of the first part shall refund to the party of the second part the sums paid on this contract."

The 45 days expired on January 17, 1954. No such mortgage was ever obtained. The contract was self-terminating and, therefore, it did "cease and terminate" on January 18, 1954 subject to the refund of the down payment of $2,416, subsequently made. On the trial plaintiff testified that in December 1953 he had informed Szekacs, Holmes' alleged agent, that he would raise the remainder of the purchase price without procuring a mortgage. Prior to February 18, 1954, Szekacs informed plaintiff that there was some question as to whether the land would be conveyed and that he would receive an explanatory letter. On the evening of February 18, 1954 plaintiff received the following communication:

"February 17, 1954

"Dear Mr. Nikora:

"I refer to the contract between us dated December 4, 1953, under which you agreed to purchase part of the 'Old Mill Farm' at Greenwich, Connecticut.

"That contract provided that it should 'cease and terminate' upon your failure to obtain a first mortgage on that property in an amount of not less than $15,000, etc., within 45 days after its date, and in that event that I should refund to you the sums paid by you thereon. This you have failed to do, and the contract therefore is at an end.

"Accordingly, I am enclosing herewith the check of Herbert Mayer in the amount of $2,416.00, payable to your order and approved of by me, in refund of the monies deposited by you with me on that contract.

"Very truly yours,
"Alfred S. Holmes
"Alfred S. Holmes"

The next day, after consulting with his attorney in Greenwich, Connecticut, plaintiff took Mayer's check to the drawee Bank in New Rochelle, New York, to cash it, arriving there shortly after the Bank had closed. An officer of the Bank informed him that the check could not be cashed that day but assured him that defendant, Mayer, had funds in this account more than adequate to meet the draft. However, plaintiff, according to his testimony, was still "worried about this check" and accepted the suggestion advanced by the Bank officer that he have it certified then and there.

Immediately after having obtained this certification, plaintiff returned to his lawyer in Greenwich and approved the following communication to Holmes:

"February 19, 1954
"Dear Mr. Holmes:

"As you undoubtedly know, this office represents the purchasers named in the above referred to contracts of sale. I would like to make it clear that our clients have every intention of performing under the terms of said contracts and expect the same from yourself.

"I further wish to advise that in the event that you are unable to procure, after reasonable diligence, the mortgages in the above referred to contracts, my clients would be given notice of such inability and a reasonable opportunity to purchase without said mortgage.

"With reference to Mr. Nikora, please be advised that he had advised me that it is not necessary for you to tender him the mortgage referred to in his contract and that he has made arrangements for his own financing.

"Very truly yours,
"Ivey, Barnum & O'Mara
"Robert C. Barnum, Jr."

No reference is made either to the alleged oral modification of the mortgage requirement, or to the certification of the $2,416 check. However, plaintiff continued to retain in his possession and control the certified check.

On February 17, 1957 defendant, Mayer, as assignee of Holmes, took title to a tract of land which included the four acre parcel that Holmes had contracted to sell to plaintiff and received title insurance expressly made subject to any claims of plaintiff under his contract.

■ If the prospective purchaser had obtained a $15,000 mortgage within 45 days, the vendor would have been assured of Nikora's ability to finance the purchase. Plaintiff apparently interprets the mortgage proviso as giving him the option of substituting cash or some equivalent at the time of closing in lieu of the specified mortgage. The contract, however, does not bestow this right of election on him. Whether Holmes would have been willing to rely on Nikora's ability to raise the purchase price and tender it at the closing is academic because this was not the bargain which he made.

In fact, the contract was made "contingent" upon Nikora's obtaining a $15,000 mortgage by January 17, 1954 and was to "cease and terminate" in the event he did not do so. In an analogous case involving the failure of a purchaser to obtain the mortgage required by the contract of sale (Fischer v. Kennedy, 1927, 106 Conn. 484, 138 A. 503), the Connecticut Supreme Court of Errors denied specific performance, saying (106 Conn. 490, 138 A. 506):

"Both parties to the contract undoubtedly anticipated that a first mortgage would be secured from the Federal Land Bank. The executory contract had been made upon this assumption. When it failed to materialize either party had the right to treat the contract as at an end; neither could have enforced it against the other."

In Lach v. Cahill, 1951, 138 Conn. 418, 85 A.2d 481, the issue on appeal was the construction in a contract to sell land of a proviso similar to the one here; it provided:

"This agreement is contingent upon buyer being able to obtain mortgage in the sum of $12,000.00 on the premises, and have immediate occupancy of the premises."

The court found that it was a condition precedent and, relying on Fischer v. Kennedy, supra, held that "If the condition is not fulfilled, the right to enforce the contract does not come into existence."

Since the contract here was required by the Statute of Frauds to be in writing, any subsequent modification would likewise have to be in writing. Plaintiff's proof establishes no valid modification of the contract and no claim is advanced that Szekacs or Holmes told Nikora that he would be relieved of obligation to secure a mortgage. Plaintiff, having failed to prove compliance with the terms of the contract, stands in no position to obtain specific performance thereof.

The only other issue requiring discussion is whether the District Court erred in refusing to sustain defendant's affirmative defense of discharge. The Court found as a fact that plaintiff did not intend to accept the check in full accord and satisfaction of his rights under the contract.

The tender by Holmes of the check was an unambiguous offer to discharge the contract in its entirety. Plaintiff argues that the clear language of the tender was rendered nugatory by defendant's failure to prove an intention on plaintiff's part to relinquish his rights under the contract through certification and retention of the check. However, once an unequivocal act of discharge has been accepted, there is no additional requirement imposed upon the vendor that he carry the difficult burden of establishing the motives behind the vendee's acceptance. To hold that a vendee, after appropriating a sum offered to discharge a contract may flout the terms of the tender and proceed to assert rights under the contract would be to interject an unwarranted uncertainty into the regulation of everyday commercial dealings.

As a matter of law the intent of Nikora in accepting payment is irrelevant. The letter tendering the check was not an offer to enter into a bilateral executory accord which, if accepted by Nikora for the purpose of satisfying the claim, would have been binding upon him. The check tendered by Holmes was a unilateral act of performance, the acceptance of which by Nikora instantaneously operated as a satisfaction of the claim. The Restatement of Contracts, section 420, sets forth this proposition of discharge in the following terms:

"Acceptance by a creditor of any performance tendered by the debtor as satisfaction of a pre-existing contractual duty, or of a duty to make compensation, is not prevented from operating as satisfaction by the creditor's manifested refusal so to regard it."

This rule pertains in Connecticut. In Potter v. Douglass, 1877, 44 Conn. 541, the creditor took $45 offered in settlement of a claim but expressly stated that he took it on account. The court held the claim discharged, saying:

"The plaintiff kept the money, and he kept it when offered in full of his claim. It must therefore be regarded as taken in full, notwithstanding any mental reservation to the contrary, or even express declaration, on the part of the defendant."

The rule is repeated in Fogil v. Boody, 1903, 76 Conn. 194, 56 A. 526, the court stating that a payment offered in full satisfaction "if received and retained by the creditor" operates as a discharge "even though he protests at the time that the amount paid is not all that is due, or that he does not accept it in full of his claim."

In Hanley Co. v. American Cement Co., 1928, 108 Conn. 469, 143 A. 566, it was held that cashing of a check for an amount admittedly due discharged the amount in dispute since it was tendered with the statement that it "pays our account up to July 1." There, too, the creditor's claim that the check was not accepted by him in full settlement availed him nothing.

That plaintiff here certified rather than cashed the check is immaterial since certification is equivalent to acceptance, Conn. General Statutes of 1949, section 6479 (NIL section 187), and discharges whatever liability underlies the check, Conn. General Statutes of 1949, section 6480 (NIL section 188).

The cases relied upon by plaintiff are not dispositive of the problem here. In Keller v. Rohde, 1929, 109 Conn. 244, 146 A. 288, a defense of accord and satisfaction was based on an assertion that a payment made in settlement of a claim for rent was also intended as payment and release of another contractual duty. The court found no evidence indicating that the payment was also offered in satisfaction of the other claim. The dicta in the opinion relied upon by plaintiff here dealt with the issue of executory accord, which, if bilateral, becomes a binding contract. The validity of the established decisional law governing this case was not challenged.

Crucible Steel Co. v. Premier Mfg. Co., 1920, 94 Conn. 652, 110 A. 52, 53, presented the converse of the facts present in Hanley Co. v. American Cement Co., supra. There the payment tendered was offered in settlement of the undisputed claim and the debtor's afterthought that it was in payment of the entire account was rejected, the court saying that "This letter does not treat the account as a single claim and offer to settle up by the payment of a lump sum, but deals with the separate invoices, so far as they are mentioned at all, and proposes to pay some and not to pay another." The facts here are exactly contrary.

Again the discussion in that case regarding the intent of the creditor was addressed to the problem of executory bilateral accord. The statement in the opinion that "The defense of accord and satisfaction requires the defendant to allege and prove a new contract based upon a new consideration" has no bearing on this case. It is not a new contract which is being proved or offered to be proved here, but merely the fact of performance. Halloran v. Fischer, 1939, 126 Conn. 44, 9 A.2d 290, dealt with a breach of an executory accord—a totally different problem.

Plaintiff argues in terms of scheming and trickery by Holmes and Mayer. There is no proof indicating fraud. Holmes and Nikora entered into a written contract to convey land. Any subsequent modification was required to be in writing. Holmes, feeling free of his contractual relations, assigned to Mayer. Nikora's and his attorneys' actions after receiving the letter of February 17, 1954, enclosing the check, are difficult to reconcile with the expected reactions of persons who believe that they have been cheated out of a valuable piece of property. If the plaintiff had been desirous of standing on his rights under the contract, he would have rejected the tendered cancellation payment forthwith. He would not have been concerned with whether the check was good or not.

The judgment decreeing specific performance is reversed and the complaint is dismissed. On the cross-appeal the denial of compensatory and exemplary damages is affirmed.