Nathan Fogle and Betty Ruth Fogle v. Commissioner.
Fogle v. Commissioner
Docket No. 2579-64.
United States Tax Court
T.C. Memo 1966-148; 1966 Tax Ct. Memo LEXIS 134; 25 T.C.M. (CCH) 785; T.C.M. (RIA) 66148; June 27, 1966
*134 Petitioners' property was sold by judicial order and checks representing their share of the proceeds of the sale and rental were refused by them in belief that acceptance would prejudice their right to collaterally attack the sale. Held: Petitioners constructively received income when the checks were delivered to them. Held further: Petitioners are entitled to a depreciation deduction for the year in which their property was sold. George M. Mott, 17 W. Market, Indianapolis, Ind., for the petitioners. Bernard J. Boyle, for the respondent. SIMPSON
Memorandum Findings of Fact and Opinion SIMPSON, Judge: The issues for decision in this case are: (1) Whether the petitioners constructively received their share of the proceeds of the sale of property in which they had an interest and their *135 share of rental income from such property when they refused to accept the checks that were offered to them, because they believed that the acceptance of such checks would prejudice their right to challenge the validity of the sale of the property, (2) whether the petitioners are entitled to a depreciation deduction for a year when their property is sold, and (3) whether certain legal expenses were currently deductible, or were capital expenses. Findings of Fact Most of the facts were stipulated, and those facts are so found. Nathan and Betty Ruth Fogle are husband and wife. They filed their joint income tax return for the taxable year 1962 with the district director of internal revenue at Indianapolis, Indiana. For convenience, Nathan will be referred to as the petitioner. In June of 1960 the petitioner and his brother, Jacob Fogle, acquired a warehouse as tenants in common in Indianapolis, Indiana. The cost of such acquisition was $25,000 and each cotenant contributed an equal amount. They leased the warehouse to an unrelated party, and assigned $24,000 to the building and $1,000 to the land for the purpose of depreciation. Depreciation was calculated on the straight-line *136 method and was based upon a useful life of 15 years. On December 6, 1961, petitioner's brother filed an action in the circuit court of Marion County for partition and the appointment of a receiver to manage the property and collect the rents. That court ruled in favor of the plaintiff, and appointed a commissioner to partition and sell the property, as well as a receiver to manage the warehouse and collect the rents. Two court-appointed appraisers submitted a joint appraisal to the court on January 15, 1962, in which they estimated the value of the property at $39,700. After due notice and publication, the commissioner of the court offered the warehouse at public sale on January 30, 1962. The petitioner's brother and his wife were the successful bidders at $40,000. On February 26, 1962, the court directed the commissioner to issue a deed to the property to them, and a properly-executed deed was issued that day. On February 28, 1962, the receiver filed his final report with the court. In such report, he indicated that he had collected gross rents of $1,350 and paid expenses of $958.51. On February 28, 1962, the commissioner also filed his final report with the court. The report *137 stated that the property had been sold for $40,000, and the expenses of sale amounted to $3,187.89, leaving $36,812.11 for distribution to the petitioner and his brother in equal shares. The commissioner petitioned for an order approving his final report and discharging him on February 28, 1962. An order to that effect was entered on the same day. On February 28, 1962, two checks were written and mailed to the petitioner. One was in the amount of $18,406.06, representing the commissioner's distribution of the proceeds of sale, and one was in the amount of $195.74, representing the receiver's collection of rents. The petitioner refused to accept either check, and he returned them on March 5, 1962. The following day, pursuant to court order, the two checks were voided and two new checks in the same amounts were issued to the clerk of the circuit court of Marion County where such funds remain. The clerk will release these funds to the petitioner upon demand. Petitioner did not agree with the findings, orders, and decrees of the circuit court of Marion County with respect to any of its actions concerning his property. When the petitioner returned the checks to the commissioner, he *138 wrote a letter stating in part: I am returning these checks to you as there does not exist any legal authority for the circumstances under which you tender them. The matter is in the hands of the Indiana Supreme Court under Cause No. 30199, and as the Court has not as yet decided the matter, there could not exist any authority in you to sell my real estate, or in any other way to interfere with it. However, there is in this proceeding no other information concerning any appeal to the Indiana Supreme Court; and the parties have stipulated that the case was not appealed to an appellate court for the State of Indiana. Albert L. Rabb, Jr., a practicing attorney from Indianapolis, Indiana, was representing the petitioner with respect to the warehouse litigation. He had been acquainted with the broad outlines of the partition suit for six weeks and the specific facts in detail for not more than two weeks before this hearing. Rabb had examined the transcript and records in the partition suit and recommended that the petitioner proceed in the circuit court of Marion County to attack certain defects in the record. He also recommended an equitable proceeding in the superior court to obtain *139 relief from enforcement of the decree of partition. In his opinion such an equitable proceeding might succeed, and petitioner should not remove the money on deposit with the clerk of the court because that action might jeopardize petitioner's possible rights to relief. As of January 1, 1962, petitioner's adjusted basis in the real estate was as follows: Cost (land and buildings, pe-
titioner's share)
$12,500.00
Depreciation allowed or al-
lowable to 12-31-61
1,200.00
Petitioner's basis as of 1-1-62
$11,300.00 The petitioner concedes that his share of the depreciation claimed for 1962, in the amount of $1,600, was excessive to the extent of $800. At the time of the hearing in this proceeding, the respondent moved to amend his answer and assert an increased deficiency. In the original notice of deficiency mailed to petitioner on March 18, 1964, the respondent had determined a deficiency of $703.91 for the taxable year 1962. This deficiency rested upon a determination that the petitioner was entitled to only $10 depreciation during such year and that certain legal expenses claimed as a deduction should be capitalized. In the amended answer, the respondent claimed *140 that the petitioner had long-term capital gain in the amount of $6,427.77 from the sale of the warehouse property. In addition, the respondent determined that the petitioner had a net rental income from the same property in the amount of $195.74. These two adjustments increased the deficiency by $1,159.27, for a total deficiency of $1,863.18. Opinion The first issue to be decided is whether petitioners constructively received in 1962 their share of the proceeds of the sale of the property and the rental income therefrom. The respondent has raised this issue by affirmative allegations in an amended answer seeking an increased deficiency, and therefore, has the burden of proof. Rule 32, Tax Court Rules of Practice.
We begin with the general rule embodied in section 451 of the Internal Revenue Code of 1964[1] that items of income are includable in gross income in the year received. The rule of constructive receipt, as found in the respondent's regulation, is: § 1.451-2 Constructive receipt of income. (a) General rule. Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it *141 is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions. * * * Under this rule, a check is normally income at the time of its receipt. Charles F. Kahler, 18 T.C. 31 (1952). A corollary to the general rule is that the taxpayer may not refuse to accept a check and thereby avoid taxable income. Hamilton National Bank of Chattanooga, 29 B.T.A. 63 (1933). An exception or limitation to the general rule is that the existence of a substantial limitation on the taxpayer's ability to control the income prevents it from being constructively received. Florence H. Griffith, 35 T.C. 882 (1961). The respondent claims that the checks mailed to petitioner were income when received, because they were subject to the petitioner's control and ability *142 to enjoy the proceeds. In addition, he argues that the transaction was closed in 1962, because the petitioner's time for an appeal expired that year. The petitioner has argued that the payments made to him were subject to substantial limitations and therefore not constructively received. It is his position that although the funds were available upon his demand, he could not collect them without seriously jeopardizing his rights to further attack the order of partition. The stipulated facts of this case clearly establish that the petitioner received checks representing income, and that he refused them in order to avoid a possible prejudice to his legal position. It is well settled that the receipt of a check is constructive receipt of income to a cash basis taxpayer. Hedrick v. Commissioner, 154 F. 2d 90 (C.A. 2, 1946), affirming a Memorandum Opinion of this Court, cert. denied 329 U.S. 719 (1946). Even after petitioner refused to accept these checks, the funds were held by the State court subject to his demand. The petitioner's argument that he could refuse the checks in order to avoid prejudice to his legal position is without legal merit. The checks *143 were absolute on their face and none of the documents and orders involved in the State proceeding and submitted to this Court contains an indication of any condition or limitation imposed upon petitioner's receipt of the checks. Unlike the case of Walter I. Bones, 4 T.C. 415 (1944), there is no indication that the checks were a mere offer. A similar problem was presented in the case of William Parris, 20 B.T.A. 320 (1930). The petitioner in that case had been involved in litigation to set aside an oil lease so that he could obtain all of the rental, rather than the fraction specified in the lease. In order to obtain the smaller fractional rentals during the period of litigation, the oil company required the petitioner to sign a division order. His attorney advised him that signing the order would prejudice his legal position and the petitioner followed this advice. The oil company withheld payments until 1923 when the litigation was settled out of court. The Board held that the petitioner's right to receive rentals was not subject to "substantial limitations or conditions", and that the question of whether his attorney had correctly advised him was immaterial. *144 The Board said that if the petitioner elected not to take possession of the income in order to obtain some other benefit, it was still constructively received. Parris was always the undisputed owner of at least that portion of the income on deposit and could obtain it by merely signing the division order. In the case at hand, no one contested Fogle's right to the income on deposit with the court, and only his own volition prevented the petitioner from enjoying its fruit. The mere fact that the petitioner might be forced to return the funds is also legally immaterial, as demonstrated by North American Oil v. Burnet, 286 U.S. 417 (1932). In that case, the Supreme Court held that income was not constructively received during a taxable year in which it was impounded by court order and held by a receiver. However, it was taxable income in the year that the court released the funds to the taxpayer, notwithstanding the fact that an appeal was pending which might result in the taxpayer being required to refund part or all of such income. The force of these cases is inescapable. The income made available to petitioner was constructively received by him in 1962, and any further *145 benefit or refund which might result from additional litigation is a matter which will give rise to a tax adjustment in a subsequent year. The petitioner has rested his case upon United States v. Steck, 295 F. 2d 682 (C.A. 10, 1961), which is not in point. In that case, the city of Wichita, Kansas, condemned the taxpayer's land and deposited the payment with the clerk of the court. The City did not, however, deposit the interest required by the condemnation judgment. The taxpayer brought a mandamus proceeding in the Kansas Supreme Court and obtained an order which stated that the City had failed to comply with the terms of the judgment, and that both interest and principal must be paid prior to disbursement by the court. The Tenth Circuit held that in view of the literal effect given by the Kansas Supreme Court to the verdict, the taxpayer had no right to the principal upon payment of it to the court, and therefore, there was no constructive receipt before the interest was also deposited. Thus, although the taxpayer argued that withdrawal of the principal would prejudice his rights, the case was not de&i4ed upon that issue and is of no assistance to the petitioner in *146 this proceeding. Accordingly, we hold that the respondent has met his burden of showing that the petitioner constructively received additional income in 1962, consisting of his share of the proceeds of the sale and his share of the rental income from the property. The second issue for decision is whether the petitioner is entitled to a depreciation deduction in the year that his property was sold for a price in excess of its adjusted basis at the beginning of that year. This issue has been resolved against the respondent by the Supreme Court in Fribourg Nav. Co. v. Commissioner, 383 U.S. 272 (1966). Accordingly, his argument must fail in this case as well. Even though we reject the respondent's legal contention on the second issue, we cannot sustain the entire deduction claimed. Our resolution of the first issue in this case necessarily means that the petitioner sold his property on February 26, 1962. It is clear from the stipulation and exhibits in this case, that the $1,600 depreciation deduction taken by the petitioner for 1962 represents depreciation over a 12-month period. The petitioner has conceded that the deduction claimed was excessive to the extent of *147 $800, but has produced no additional evidence, nor has the respondent. Upon the basis of $800 per year, the appropriate deduction for depreciation for January 1 through February 26, 1962, and the consequent adjustment of capital gains income can be made in a Rule 50 computation. Therefore, we find that the petitioner is entitled to a depreciation deduction for such a period. See E. J. Murray, 21 T.C. 1049 (1954), affd. 232 F. 2d 742 (C.A. 9, 1956), cert. denied 352 U.S. 872 (1956). The last issue is whether the petitioner is entitled to deduct certain legal fees paid in 1962. Upon this issue, the petitioner has the burden of proof, yet he has submittedd no evidence whatsoever. We are therefore compelled to sustain the respondent's determination that the expenses in question were capital expenses. In order to reflect the resolution of the issues as provided in this opinion, Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.↩