Howard A. FROMSON and
Antoinette D. Fromson

v.

The UNITED STATES.

No. 92–98T.

United States Court of Federal Claims.

Aug. 9, 1994.

Joseph Michaels, IV, New York City, attorney of record for plaintiffs.

Elizabeth D. DePriest, Washington, DC, with whom was Asst. Atty. Gen. James A. Bruton, for defendant.

## OPINION

YOCK, Judge.

This tax case is before the Court on cross-motions for summary judgment pursuant to RCFC 56. In this action, the plaintiffs seek to recover an alleged overpayment of taxes for the tax year ending December 31, 1986, in the amount of $2,406,916.[1] As the basis of their claim, the plaintiffs allege that their 1986 income should not include a cashier's check in the amount of $4,813,833 that the plaintiffs received on December 30, 1986, in partial payment of a judgment in the plaintiffs' favor.[2] The Government argues that the plaintiffs' 1986 income should include the cashier's check because the plaintiffs received the check in 1986, the check was not subject to any restrictions or limitations, and the plaintiffs had a legal right to have the court-ordered judgment partially satisfied by the check in 1986. After a full and careful review of the pleadings, briefs and submissions filed by the parties, the Court concludes that the Government's argument prevails. For the reasons set forth below, the defendant's Motion for Summary Judgment is granted, and accordingly, the plaintiffs' motion is denied.

### Facts

For purposes of the Government's Motion for Summary Judgment, the following facts are not in dispute: Mr. Howard A Fromson (referred to singularly as the "plaintiff") is the inventor and owner of United States Letters Patent No. 3,181,461 (the " '461 patent"), issued to him on May 4, 1965. The patent covered various photolithographic plates used in printing as well as the technology utilized in producing those plates. The plaintiff is also the founder of Ano–Coil Corporation, a company that manufactures litho-

---

1. In order to vest jurisdiction in the United States Court of Federal Claims, a plaintiff must first file an administrative claim for refund with the Internal Revenue Service ("IRS"), either by means of an amended return or by means of a Standard Form 843, which specifically lists the deductions claimed. The net amount of the alleged overpayment must also be calculated and entered on the amended tax return or Form 843. The applicable Internal Revenue Code ("IRC") section provides:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed * * * until a claim for refund or credit has been duly filed with the Secretary * * *.

26 U.S.C. § 7422(a) (1988). Because it is undisputed that the plaintiffs filed a timely administrative claim for refund, this Court has jurisdiction over the present action.

2. In its Cross–Motion for Summary Judgment, the plaintiff refers to this check as the "Settlement Check." This term, however, is inaccurate in that it presupposes that the check was sent by Cookson America, Inc., as an offer to settle a dispute or pursuant to some settlement agreement. Because the primary issue of concern in this case is whether the check would have, in fact, operated as an offer to settle a dispute, the Court refers to this check as either the "Cookson America, Inc., check" or simply the "cashier's check."

graphic plates such as the ones covered by the '461 patent. Ano–Coil Corporation has its headquarters and principal place of business in Connecticut, the plaintiff's home state.

In December 1976, the plaintiff brought suit against Advance Offset Plate, Inc. ("Advance"), a company that manufactured and sold lithographic plates that allegedly infringed the plaintiff's '461 patent. Advance was a subsidiary of Cookson America, Inc., in 1986. In 1978, the plaintiff also sued three customers of Advance that had also apparently infringed the plaintiff's patent. In 1980, the district court consolidated these three suits with the plaintiff's suit against Advance. In his consolidated suit, the plaintiff claimed that Advance and its customers directly and contributorily infringed his '461 patent. In that action, the plaintiff requested injunctive relief against the patent infringement, an accounting for damages and treble damages, plus attorney's fees and costs.

The district court initially held that Advance and its customers had not infringed upon the plaintiff's patent, however, the court's ruling did not withstand appeal. *Fromson v. Advance Offset Plate, Inc.*, 219 U.S.P.Q. 83, 90 (D.Mass.), *vacated and remanded*, 720 F.2d 1565 (Fed.Cir.1983). On remand, the district court held that Advance and its customers had, in fact, infringed the plaintiffs '461 patent, but then went on to find the patent invalid for obviousness. The district court's finding with regard to the invalidity of the plaintiff's patent was also overturned on appeal. *Fromson v. Advance Offset Plate, Inc.*, 223 U.S.P.Q. 1132, 1138, 1984 WL 1390 (D.Mass.1984), *aff'd in part, rev'd in part*, 755 F.2d 1549 (Fed.Cir.1985) (reversing district court's holding that plaintiff's patent was invalid for obviousness). Subsequently, in an unpublished opinion dated December 11, 1986, the district court awarded the plaintiff $1,630,217 in compensatory damages, $1,630,217 in punitive damages, $1,553,399 in prejudgment interest, plus post-judgment interest and court costs. The trial court did not, however, award the plaintiff his attorney's fees.

Sometime between December 11, 1986, and December 23, 1986, Advance offered to settle the district court's judgment with the plaintiff for $200,000 less than the face amount of the judgment.[3] The settlement offer also excluded post-judgment interest and court costs. As part of its settlement offer, however, Advance agreed to delay payment of the settlement proceeds until early 1987. Although the plaintiff would have had to forego his appellate rights and accept over $200,000 less than the judgment amount, the proposed delay in payment would have allowed the plaintiff to benefit significantly from the new lower 1987 tax rate that would have been applicable to the plaintiff's patent infringement award or settlement. Nonetheless, upon the advice of his attorney, the plaintiff flatly rejected Advance's settlement offer.

On Monday, December 29, 1986, Cookson America, Inc., the parent company of Advance, mailed a cashier's check in the amount of $4,813,833 to the plaintiff's residence, payable to Howard A. Fromson. The check bore no limiting restrictions or conditions on its face or reverse side, and no release or settlement agreement accompanied the check. Attached to the check, however, was a letter that read:

> Enclosed is a cashier's check dated December 29, 1986, made payable to you in the amount of Four Million Eight Hundred Thirteen Thousand Eight Hundred Thirty-three ($4,813,833) dollars.
>
> This payment is made pursuant to the order issued by the Honorable Robert E. Keeton, United States District Court Judge, on December 23, 1986.
>
> If you have any questions, please do not hesitate to call me.
>
> Sincerely,
>
> /s/
>
> John H. Doherty

---

3. The defendant argues that settlement negotiations were held between December 23, 1986, and December 29, 1986. Although the specific time frame of these negotiations is only questionably relevant, the Court must resolve all disputed facts in the favor of the nonmoving party, which in this case is the plaintiff. *See, e.g., Reynolds v.* *Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988); *W.R. Cooper Gen. Contractor, Inc. v. United States*, 843 F.2d 1362, 1364 (Fed. Cir.1988). Therefore, the Court accepts as true the plaintiff's allegation that the settlement negotiations took place between December 11, 1986, and December 23, 1986.

The plaintiff received the check on Tuesday, December 30, 1986. Although the letter accompanying the cashier's check indicated that payment was being made "pursuant to the order issued by the Honorable Robert E. Keeton, United States District Court Judge, on December 23, 1986," the check amount did not include court costs or post-judgment interest. As such, the plaintiff claims that he subjectively believed that if he accepted the check by presenting it for payment, he would be forfeiting his appellate rights and the court costs and post-judgment interest granted by the district court's award.

Because of the plaintiff's fear that he might create an accord and satisfaction by presenting the cashier's check for payment, the plaintiff returned the check uncashed to Advance via overnight mail on Tuesday, December 30, 1986. Enclosed with the uncashed check was a letter which read:

> Dear Mr. Doherty:
>
> I wish to acknowledge receipt of your Cashier's check in the amount of $4,813,-833. In view of the fact that Cookson and I both have the right to appeal the judgment of December 23, 1986, and these appeal rights do not expire until January 22, 1987, upon advice of counsel, I am returning your check until such time as the funds are unencumbered.
>
> Yours sincerely,
>
> /s/
>
> Howard A. Fromson

By letter dated Wednesday, December 31, 1986, Cookson America, Inc., again remailed the cashier's check to the plaintiff. In that letter, Cookson advised the plaintiff that it intended to claim the amount of the check as a deduction from its 1986 taxes, and advised the plaintiff that "the funds are available for your unrestricted use." As had always been the case, the check did not bear any restrictive limitation on its face or reverse side, and there was no release or purported settlement agreement enclosed with the check.

On January 22, 1987, the plaintiff filed a notice of appeal from the judgment of the district court, seeking an increase in the damage award granted by the trial judge.[4] Following the filing of his notice of appeal, the plaintiff presented Advance's cashier's check for payment.

As Cookson America advised in its final correspondence with the plaintiff on December 31, 1986, it deducted the $4,813,833 payment to the plaintiff from its gross income on its 1986 consolidated return. This deduction was accepted by the Internal Revenue Service ("IRS") on audit. Cookson America also filed with the IRS a Form 1099–MISC, reporting the $4,813,833 payment to Howard A. Fromson in 1986.

Correspondingly, the plaintiff reported Advance's payment of $4,813,833 as gross business receipts on Schedule C of his 1986 tax return. The plaintiff also indicated that he was reporting his income in 1986 under the cash receipts and disbursements method of accounting.[5] Subsequently, on August 31, 1987, the plaintiff filed an amended individual tax return (Form 1040X), seeing a refund of the $2,406,916 in 1986 income taxes at issue in this case. As the basis for his amended return, the plaintiff asserted that although he originally received the Cookson America cashier's check on December 30, 1986, he should not be taxed on the income until 1987, when the alleged restrictions and limitations on the check were removed.

---

4. According to the undisputed facts, Advance filed its notice of cross-appeal on or about February 2, 1987. In 1987, the United States Court of Appeals for the Federal Circuit affirmed, without opinion, the district court's judgment respecting damages. *Fromson v. Advance Offset Plate, Inc.,* 837 F.2d 1097 (Fed.Cir.1987).

5. Under the cash receipts and disbursements method of accounting, items are reported in the year they are received and deductions and credits are taken in the year paid. Unlike the accrual method, under which items are reportable when the right to receipt or obligation arises, the cash method makes no effort to correlate receipts and payments in the same year. It is for this reason that problems arise, frequently requiring the courts to determine when the taxpayer "received" or "paid" the items in question. John C. Chommie, *Federal Income Taxation,* ¶ 4.04 (3d ed. 1988). In the case at bar, the parties do not dispute that the Cookson America cashier's check was taxable, they only dispute *when* the check was taxable.

In February 1990, the District Director of the Hartford, Connecticut, IRS disallowed the plaintiff's amended return and request for refund. On August 27, 1991, the IRS Appeals Office in East Hartford, Connecticut affirmed the District Director's disallowance. The plaintiff then instituted this action with his wife, Antoinette D. Fromson, who was joined because of her status as a joint tax-payer on the original 1986 tax return and amended tax return at issue in this case.

In his complaint and Cross–Motion for Summary Judgment, the plaintiff argues that the amount of the Cookson America check was not includable in his 1986 gross income because he returned it uncashed in a reason-able attempt to preserve his appellate rights. According to the plaintiff, after he originally received the check in 1986, he was advised by his attorney that if he cashed the check prior to filing his notice of appeal, he might create an accord and satisfaction and would possibly have to forego his appeal. As such, the plaintiff argues that it was his subjective belief that cashing the check in 1986 would have prejudiced his right to appeal the dis-trict court's award of damages. In his mo-tion, the plaintiff contends that only after he was certain that there were no restrictions or limitations on the check (*i.e.*, after he filed his notice of appeal) did he present the cash-ier's check for payment.[6]

The Government counters that the cash-ier's check, originally received by the plaintiff on December 30, 1986, was includable as gross income in that year because it was not subject to restrictions or limitations when originally sent. The defendant argues that, as a matter of law, the plaintiff could not have created an accord and satisfaction with Advance by cashing the check in 1986. The defendant contends that the cashier's check was sent as partial payment of the district court's award of damages, and that by ac-cepting the check, the plaintiff would not have prejudiced his right to collect the re-mainder of the judgment or his appellate rights. As such, the defendant concludes that the check was unrestricted when sent, and therefore taxable in 1986.

*Discussion*

A summary judgment "shall be rendered forthwith if the pleadings, deposi-tions, answers to interrogatories, and admis-sions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Celo-tex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). To create a genuine issue of material fact, the nonmovant must do more than present evidence raising some doubt regarding an assertedly disputed issue. As such, "[i]f the evidence is merely colorable, or is not signifi-cantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citations omitted). The evidence must, how-ever, be viewed in a light most favorable to the nonmovant, with all reasonable inferenc-es drawn in his favor. *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962). The moving party bears the burden of demonstrating the ab-sence of all genuine issues of material fact. *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1560 (Fed.Cir.1988). *See also A.B. Chance Co. v. RTE Corp*, 854 F.2d 1307, 1310–11 (Fed.Cir.1988). However, the mov-ing party need not produce evidence showing the absence of a genuine issue of material fact but rather may discharge its burden by showing the Court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553–54; *Dairyland Power Coop. v. United States*, 16 F.3d 1197 (Fed.Cir.1994).

---

**6.** Also, in his Cross–Motion for Summary Judg-ment, the plaintiff argues that genuine issues of material fact preclude summary judgment in the Government's favor. While the rules of this Court allow a party to make inconsistent argu-ments and plead inconsistent theories of recov-ery, the plaintiff's argument demonstrates a fun-damental misunderstanding of RCFC 56. If both parties are moving for summary judgment on the same issue (*i.e.*, whether the Cookson America check was subject to substantial restrictions or limitations in 1986), it is axiomatic that both parties agree that there remain no issues of ma-terial fact with respect to that issue.

In the case at bar, there is but a single issue to be decided by the Court: Whether the Cookson America, Inc., cashier's check, originally received by the plaintiff on December 30, 1986, but not cashed by the plaintiff until January 1987, was taxable in 1986 or 1987. Because both parties have moved for summary judgment on this same issue, it appears to the Court that there remain no issues of material fact precluding summary judgment at this juncture.

■ The Internal Revenue Code, 26 U.S.C. § 61 (1982) sets forth the definition of the term "gross income." [7] That section provides:

§ 61 Gross income defined

(a) General Definition

Except as otherwise provided in this subtitle, gross income means all income from whatever source derived * * *.

As a general rule, amounts received as damages in a patent infringement suit are includable as gross income. *Bright v. United States*, 926 F.2d 383 (5th Cir.1991); *Estate of Kamm v. Commissioner*, 349 F.2d 953, 955 (3d Cir.1965). In this case, the parties agree that the Cookson America cashier's check would fit within the definition of gross income, but dispute when (what tax year) that gross income should be taxable. As mentioned above, this question requires the Court to determine when the plaintiff, as a cash-basis taxpayer, "received" the gross income at issue in this case for purposes of the IRC.

■ Because the cash receipts and disbursements method of accounting in its most basic form leaves the taxpayer with the power to determine when items become includable as gross income, Treasury Regulations and case law have supplemented the doctrine of actual receipt with the theory of constructive receipt as a test to determine when income has been "received" 2 MERTENS, THE LAW OF FEDERAL INCOME TAXATION, ¶ 10.01 (1989); *see also* JOHN C. CHOMMIE, FEDERAL INCOME TAXATION, ¶ 4.04 (3d ed. 1988). The

result of the constructive receipt doctrine is that a taxpayer may not refuse to accept tender of a check, thereby choosing for himself a different year to include it as gross income. *Fogle v. Commissioner*, 25 T.C.M. (CCH) 785, 1966 WL 904 (1966); *Hamilton Nat'l Bank of Chattanooga v. Commissioner*, 29 B.T.A. 63 (1933).

■ The parameters of the constructive receipt doctrine were set forth in Treas.Reg. § 1.451–2(a) during the year at issue in this case. That regulation provides in pertinent part:

§ 1.451–2 Constructive receipt of income.

(a) *General rule.* Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. *However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions.*

26 C.F.R. § 1.451–2(a) (1986) (emphasis supplied). Thus, unless the cashier's check at issue in this case was subject to *substantial* limitations or restrictions, it would qualify as gross income during the 1986 tax year. This is true regardless of whether the plaintiff might have had to refund all or a portion of the funds in a later year. *Brown v. Helvering*, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725 (1934); *Burnet v. Sanford & Brooks Co.*, 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383 (1931); *Saunders v. Commissioner*, 101 F.2d 407 (10th Cir.1939); *Penn v. Robertson*, 115 F.2d 167 (4th Cir.1940).

In the case at bar, the plaintiff argues that:

Because the Settlement Check [8] was a settlement offer and carried concomitant conditions express, implied, and implied by law, its use was restricted to Fromson's

---

**7.** References to the Internal Revenue Code ("IRC") are to the 1954 Code as amended and in effect in the years at issue in this case. Hereinafter, all citations to section numbers are to the IRS (26 U.S.C.), unless otherwise indicated.

**8.** *See Supra* note 2.

acceptance of the conditions of settlement. It is incontrovertible that acceptance of a settlement offer conditioned upon a waiver of appellate rights is a legitimate restriction which prevents the amount of the offer from being included in gross income until such conditions are accepted or resolved, which in this case was not until 1987.

Even if the Court cannot at this time summarily conclude that the Settlement Check was in fact part of a settlement offer, the Court can determine that the ambiguity and lack of any unequivocal language in the December 29, 1986 Letter specifically setting forth the terms under which the Settlement Check was being offered created substantial limitations in that Fromson cannot be expected to cash a check which is subject to interpretations that could have monumentally disastrous effect until such time as the conditions or [sic] that check are clarified.

Plaintiff's Cross–Motion for Summary Judgment, at 27 (June 18, 1993). In summary, the plaintiff contends that the Advance cashier's check represented a settlement offer in furtherance of Advance's previously rejected settlement offer. As such, the plaintiff believes that if he had cashed the check, he would have waived his appellate rights, and the right to contest the damage award granted by the district court. Furthermore, the plaintiff argues that he thought that by cashing the check, he might create an accord and satisfaction that would have prevented him from collecting the court costs and post-judgment interest not included in the check. As such, the plaintiff argues that the check was subject to substantial limitations or restrictions, and that he therefore did not constructively receive the check in 1986. The plaintiff also argues that the cover letter mailed with the cashier's check was ambiguous and that it created sufficient doubt in the plaintiff's mind so that he subjectively believed that he might compromise his claim against Advance by cashing the check.

For purposes of this Motion for Summary Judgment, the Court must accept as true the plaintiff's statement of his subjective belief, however, in determining whether the check was subject to substantial limitations or restrictions (i.e., whether cashing it would have created an accord and satisfaction) in 1986, the plaintiff's subjective belief is irrelevant. This is true whether the Court analyzes the issue under Connecticut law, as the parties urge, or the law of any other state.

 Under the common law of Connecticut, an accord is a contract between a creditor and a debtor to settle a claim by performing other than that which is due. Satisfaction takes place when the accord is ultimately executed. *W.H. McCune, Inc. v. Revzon*, 151 Conn. 107, 109, 193 A.2d 601 (1963). The elements of an accord and satisfaction are "(a) agreement to settle a disputed claim; and (b) fulfillment of the agreement's terms." *Associated Constr. Co. v. Camp, Dresser & McKee, Inc.*, 646 F.Supp. 1574, 1580 (D.Conn.1986) (citing *Gilreath v. Sentry Ins. Co.*, 38 Conn.Sup. 422, 450 A.2d 873 (1982)). However, with regard to an offer for an agreement of accord "[t]here must be accompanying expressions sufficient to make the creditor understand, or to make it unreasonable for him not to understand, that the performance is offered to him as full satisfaction of his claim and not otherwise." 6 CORBIN ON CONTRACTS, § 1277 (1962 & Supp.1993) (citing *Clare v. Freedman*, 118 Conn. 68, 170 A. 477 (1934); *Crucible Steel Co. of America v. Premier Mfg. Co.*, 94 Conn. 652, 110 A. 52 (1920)). Regardless of the plaintiff's subjective belief, Advance would have had to have made "known the intended effect of an acceptance of [its] tender of payment 'in some unmistakable manner so that [the plaintiff was] bound to understand that, if he [took] it in full satisfaction of his claim.'" *Peerless Hosiery Co. v. Northern Ins. Co.*, 108 F.Supp. 52, 56 (D.Conn.1952), aff'd, 199 F.2d 957 (2d Cir.1952) (quoting *Keller v. Rohde*, 109 Conn. 244, 146 A. 288, 290 (1929)).

 The courts of Connecticut have also described the law of accord and satisfaction as follows:

When there is a good faith dispute about the existence of a debt or about the amount that is owed, the common law authorizes the debtor and the creditor to negotiate a contract of accord to settle the

outstanding claim. Such a contract is often initiated by the debtor, who offers an accord by tendering a check as "payment in full" or "in full satisfaction." If the creditor knowingly cashes such a check, or otherwise exercises full dominion over it, the creditor is deemed to have assented to the offer of accord. Upon acceptance of the offer of accord, the creditor's receipt of the promised payment discharges the underlying debt and bars any further claim relating thereto, if the contract of accord is supported by consideration.

*Blake v. Blake,* 211 Conn. 485, 560 A.2d 396, 399 (1989). The process of making an accord, however, and of determining the legal effect thereof, is the same as in the case of contracts in general. 6 CORBIN ON CONTRACTS, § 1277 (1962 & Supp.1993). As such, the Court must look to the *objective* manifestations of intent of the parties in determining whether the parties have mutually entered into an accord and the terms of that accord.[9] *Hess v. Dumouchel Paper Co.,* 154 Conn. 343, 225 A.2d 797 (1966); RICHARD A. LORD, WILLISTON ON CONTRACTS, § 4:1 (4th ed. 1990). It is this objective manifestation that the plaintiff has failed to show in the case at bar.

The plaintiff acknowledges that he flatly rejected Advance's original December 1986 settlement offer. The plaintiff further acknowledges that there was no discussion of a further settlement offer after he rejected the original December 1986 settlement offer.

The plaintiff concedes that there were no restrictions or limiting endorsements on the face or reverse side of the December 29, 1986, cashier's check, and that the cover letter enclosed with the check did not make "known the intended effect of an acceptance of [its] tender of payment 'in some unmistakable manner so that [the plaintiff was] bound to understand that, if he [took] it, he [took] it in full satisfaction of his claim.'" *Peerless Hosiery Co. v. Norther Ins. Co.,* 108 F.Supp 52, 56 (D.Conn.1952), *aff'd,* 199 F.2d 957 (2d Cir.1952) (quoting *Keller v. Rohde,* 109 Conn. 244, 146 A. 288, 290 (1929)). To the contrary, the plaintiff argues that:

> The ambiguity and lack of any unequivocal language in the December 29, 1986 Letter specifically setting forth the terms under which the Settlement Check was being offered created substantial limitations in that Fromson cannot be expected to cash a check which is subject to interpretations that could have [a] monumentally disastrous effect until such time as the conditions or [sic] that check are clarified.

Plaintiff's Cross–Motion for Summary Judgment, at 27 (June 18, 1993). This notwithstanding, the plaintiff contends that it was the *lack of clarity* in the cover letter that created the substantial limitation on the cashier's check enclosed with the letter. Unfortunately for the plaintiff, the case law makes it abundantly clear that an offer of accord cannot be made with ambiguity, obscurity and uncertainty.[10]

9. While the element of consideration is required to support a valid accord, the settlement of a genuine dispute can serve as consideration for the new agreement. In this case, the Court, for purposes of this motion, must accept as true the plaintiff's allegation that the parties had a genuine dispute as to the amount of damages that the district court awarded. If the parties settled this dispute by waiving their respective rights to an appeal, consideration could be found to support the alleged accord. While the genuine dispute requirement ultimately turns on a question of fact, the elements of offer and acceptance prove to be much more problematic to the plaintiff's case as a matter of law.

10. The plaintiff argues in his brief that *Nikora v. Mayer,* 257 F.2d 246, 249 (2d Cir.1958), stands for the proposition that parties can reach an accord informally, unilaterally, and without a clear, unequivocal and objective intent to be bound. However, the plaintiff's reading of that case is squarely at odds with the facts and holding of *Nikora.* In the *Nikora* case, a purchaser entered into a contract to purchase real estate that was contingent on the purchaser's ability to secure a mortgage loan by a certain date. When the purchaser failed to secure a mortgage, the vendor returned the purchaser's earnest money together with a letter that stated:

"[The] contract provided that it should 'cease and terminate' upon your failure to obtain a first mortgage on that property in an amount of not less than $15,000, etc., within 45 days after its date, and in that event that I should refund to you the sums paid by you thereon. This you have failed to do, and the contract therefore is at an end.

"Accordingly, I am enclosing herewith the check of Herbert Mayer in the amount of $2,416.00, payable to your order and approved of by me, in refund of the monies deposited by you with me on that contract."

In his Cross–Motion for Summary Judgment, the plaintiff relies heavily on *Bones v. Commissioner*, 4 T.C. 415, 1944 WL 42 (1944), and argues that the *Bones* case is analogous to the case at bar. In the *Bones* case, the plaintiff was hired as a salary-plus-commission salesperson by Altorfer Brothers, a local manufacturer of washing machines and other household appliances. Although he did not have a formal employment contract, the vice-president of the company acknowledged in writing that the plaintiff would receive a one and one-half percent commission on all business negotiated by him in a designated territory covering nine states. On November 26, 1941, Altorfer Brothers notified the plaintiff that his services had not proven satisfactory, and that he was to be terminated as of November 30, 1941. He was also notified in writing that "checks *in full payment* of all salary and commissions, up to and including November 30, 1941, will be given to you by Mr. Brodrick not later than December 3, 1941." *Id.* at 416 (emphasis supplied). On December 1, 1941, the comptroller of Altorfer Brothers sent a letter to the plaintiff enclosing *"in full of all liabilities of Altorfer Bros. Company* to you for services rendered, salary check in the amount of $645.00 and commission check in the amount of $11,052.40, both payable to your order." *Id.* (emphasis supplied). Attached to the enclosed check for $11,052.40 was a voucher that carried the notation *"[i]n full of all commissions* under letter of December 1, 1939." *Id.* (emphasis supplied). The plaintiff did not cash the check in 1941 because he believed that he was entitled to a greater amount of commission than what the check reflected, and he did not want to prejudice his right to dispute the amount by cashing the check.

In its decision, the United States Tax Court held that there could be no question that the check was sent as an offer upon the condition that it be accepted in full settlement and payment of all claims. As such, the *Bones* court held that it was likely that an accord and satisfaction would have been created if the plaintiff had cashed the check. The court concluded that the plaintiff in *Bones* had a legal right to refuse the check because he "reasonably and prudently underst[ood] his position to be such that if he accepted the offer which was made upon the condition stated an accord and satisfaction would have resulted." [11] *Id.* at 420.

In the present case, the text of the December 29, 1986, cover letter did not represent that the payment was being made "pursuant to a settlement agreement" or "in full payment" of the district court judgment, but rather it merely represented, and correctly so, that the check was being mailed "pursuant to the order issued by the Honorable Robert E. Keeton, United States District Court Judge, on December 23, 1986." Given the plaintiff's admission that the letter did not *unmistakably* convey an offer to settle a genuine dispute, and given the text of the letter, which accurately indicated that the check was being sent "pursuant to the order issued by the Honorable Robert E. Keeton, United States District Court Judge, on December 23, 1986," the only "reasonable and prudent" interpretation was that the check was being sent as a partial payment on the December 23, 1986 judgment. By cashing the check, the plaintiff would have been under no obligation beyond that of giving Advance proper credit for the money received. *Williams v. Apothecaries' Hall Co.*, 80 Conn. 503, 69 A. 12 (1908); *Crucible Steel Co. of*

*Nikora v. Mayer*, 257 F.2d 246, 247 (2d Cir.1958). The *Nikora* court held that the purchaser's acceptance of the check instantaneously operated as a satisfaction of any claim he might have had under the purchase contract, and that the purchaser's subjective intent in cashing the check was irrelevant. The plain and unmistakable language of the cover letter mailed by the vendor in *Nikora* defeats any comparison between that case and the case at bar.

11. Again, instead of looking at the plaintiff's subjective beliefs, the court looked to whether it was objectively reasonable for the plaintiff to conclude that he might prejudice his rights by cashing the check. This would have been true regardless of whether the court resolved the accord and satisfaction issue by holding that there was no objective manifestation creating an offer of settlement, or whether the court resolved the issue of the plaintiff's "legal right" to reject the check on the basis of the objective reasonableness of the plaintiff's belief that he might waive his rights by cashing the check.

*America v. Premier Mfg. Co.*, 94 Conn. 652, 110 A. 52 (1920).

The plaintiff contends, however, that the Court should not accept the Government's argument that Advance intended the $4,813,833 only as a partial payment toward the judgment and not a final settlement. The plaintiff urges that:

> the Court should take a skeptical view of Defendant's contention that a sophisticated and well-endowed corporation such as Cookson would make a $4,813,833 "partial" payment prior to the date under the Federal Rules when the Judgment was enforceable and prior to a final determination from the Court of Appeals. It is implausible to assume that Advance—which was liable for the total Judgment Sums, *i.e.*, $4,813,833 in aggregate damages and approximately $8,000 in post-judgment interest and $9,000 in litigation costs—would satisfy its liability by making one payment of $4,813,833 and then, at a latter date make a $17,000 payment.

Plaintiff's Cross–Motion for Summary Judgment, at 26 (June 18, 1993). Again, the plaintiff's focus on Cookson's subjective intent or motive in sending the check is misplaced. While the size and sophistication of Advance and Cookson might have some bearing on the objective reasonableness of the plaintiff's belief that the check was tendered as payment in full of the judgment, there is simply no clear and unambiguous evidence to suggest that the payment was intended as an offer for an accord. In fact, the plaintiff does not allege that he even supplied the district court, Advance or Cookson America with a Bill of Costs prior to the time the December 29, 1986, check was sent. Thus, it would have been impossible for Cookson to have included court costs and post-judgment interest in the December 29, 1986, check.

Furthermore, other courts have consistently held that acceptance of a check in payment of a judgment in and of itself, does not amount to an accord and satisfaction, thereby barring an appeal.[12] "It is a generally accepted rule of law that where a judgment is appealed on the ground that the damages awarded are inadequate, acceptance of payment of the amount of the unsatisfactory judgment does not, standing alone, amount to an accord and satisfaction of the entire claim." *United States v. Hougham,* 364 U.S. 310, 312, 81 S.Ct. 13, 16, 5 L.Ed.2d 8 (1960); *see, e.g., McGowan v. King, Inc.,* 616 F.2d 745, 747 (5th Cir.1980). Rather, a party "is foreclosed from taking * * * [an] appeal only if the parties mutually intended a final settlement of all claims in dispute and a termination of the litigation." *McGowan,* 616 F.2d at 747. This is true regardless of whether the court analyzes the issue under the concept of waiver, implied-in-fact contract or the "acceptance of the benefit" doctrine.[13] *See generally* Benson K. Friedman,

---

**12.** The plaintiff contends, however, that these cases involve situations where the defendant tendered the *full judgment amount,* whereas in the case at bar, Cookson only tendered a *partial* payment of the judgment. While it may be true that it would be less likely that a full payment of a judgment, in and of itself, could constitute an offer for an accord, the facts of the case at bar make the plaintiff's argument that Cookson America's partial payment was an offer of accord similarly unfeasible.

**13.** The "acceptance of the benefit" doctrine is implicated when a defendant tenders the full amount or a substantial portion of a judgment, the plaintiff accepts the tender and then files an appeal in an effort to increase the judgment. Although the defendant may have tendered the funds as an offer to settle the litigation, the defendant may have offered the payment for a variety of other reasons (*i.e.,* tax reasons, denial of a stay of judgment pending appeal, accrual of post-judgment interest on the judgment). Under the common law acceptance of the benefit doctrine, a plaintiff who accepted a substantial portion of the benefits of a judgment could not appeal the amount of the award unless the case fell within one of two exceptions to the general rule: First, the plaintiff could appeal if the defendant did not contest the amount of the payment (*i.e.,* the defendant only paid the undisputed portion of the judgment). Second, the plaintiff could appeal if the judgment involved issues that were divisible, and the defendant only tendered payment with respect to a claim that was not on appeal. Although the traditional acceptance of the benefit doctrine was uniformly accepted in the federal courts until 1960, the Supreme Court invalidated the common law rule in *United States v. Hougham,* 364 U.S. 310, 81 S.Ct. 13, 5 L.Ed.2d 8 (1960); *see e.g.* Benson K. Friedman, *An Intent-based Approach to the Acceptance of the Benefits Doctrine in the Federal Courts,* 92 Mich. L.Rev. 742, 743 (Dec. 1993) (and cases cited therein).

*An Intent-based Approach to the Acceptance of the Benefits Doctrine in the Federal Courts,* 92 MICH.L.REV. 742 (Dec. 1993).

In summary, given the undisputed facts of this case, the plaintiff could not have created an accord and satisfaction by cashing Cookson's partial payment of the district court's judgment in 1986. The check was not subject to substantial limitations or restrictions in 1986, and although the Court must accept the plaintiff's allegation that he subjectively believed he might prejudice his appellate rights by negotiating the check, his subjective beliefs were not reasonable as a matter of law and in light of the circumstances of this case. Since the Court concludes that the check was not subject to substantial limitations or restrictions when originally sent, the full amount of the check was constructively received by the plaintiff in 1986, and taxable in that year pursuant to Treas.Reg. § 1.451–2(a) (1986).

## CONCLUSION

For the reasons stated above, the defendant's summary judgment motion is granted, the plaintiff's cross-motion is denied, and the plaintiff's complaint will be dismissed. The clerk of the Court is directed to enter judgment accordingly for the Government.

No costs.