T.C. Summary Opinion 2002-94


UNITED STATES TAX COURT


CRAIG A. AND ROSEANN B. MILLER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9973-01S.            Filed July 19, 2002.


<u>Ned Leiba</u>, for petitioners.

<u>Christian Speck</u>, for respondent.


WOLFE, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  All Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency of $3,102 in petitioners' 1999 Federal income tax.  After a concession by petitioners,[1] the sole issue for decision is whether petitioners' gross income for 1999 must include a check for $11,091.90 that they received in 1999 but did not cash until 2000.

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein.  Petitioners resided in Tracy, California, at the time the petition was filed.[2]

## Background

In 1993 petitioners acquired 40 acres of land in Tracy, California.  Petitioners planted apricot trees on the land for the purpose of commercially farming apricots.  Petitioners entered into a management agreement with Stephen Pellegri, Sr.

---

[1]In the notice of deficiency, respondent determined that petitioners failed to report dividend income of $80.  Petitioners conceded this issue.

[2]Prior to trial, petitioners filed a motion to shift the burden of proof to respondent.  Under sec. 7491(a) of the Internal Revenue Code, the burden of proof shifts to respondent if the taxpayer:  (1) Has complied with substantiation requirements under the Internal Revenue Code; (2) has maintained all records required by the Internal Revenue Code and has cooperated with all reasonable requests by respondent for information, documents, meetings, etc.; and (3) introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed under subtitle A or B.  Petitioners have satisfied the requirements of sec. 7491(a).  However, as the discussion below shows, the resolution of this case does not depend on which party has the burden of proof, and therefore petitioners' motion is moot.

(Pellegri Sr.), one of the more prominent farmers in the Tracy area. In addition to allocating various expenses between the parties, the agreement provided that Pellegri Sr. would manage the apricot farm, and that he would receive as "rent" on the apricot trees 70 percent of the revenue from the trees. The management agreement was a 2-page, unsigned, undated, hand-written document. It did not cover the question of how the parties would resolve claims that might arise against third parties.

Craig Miller (petitioner) had some involvement in the operation of his apricot farm. Among other activities, petitioner assisted in planting trees, applying protective coats to the trees, and spraying ditches.

Pellegri Sr. purchased fertilizers and pesticides from John Taylor Fertilizers Co., Inc. (JTF) for petitioners' apricot farm. Pellegri Sr. had been a regular customer of JTF in connection with other farming activities before working with petitioners.

During 1999, Pellegri Sr.'s health suffered due to cancer. As a result, Pellegri Sr.'s sons took an increasingly active role in the management of petitioners' apricot farm, and petitioners dealt primarily with Stephen Pellegri, Jr. (Pellegri Jr.).

During April and May of 1999, petitioners' apricots suffered extensive damage due to misapplication of pesticides and a failure to control a powdery mildew that developed on the

apricots. To assess the damage, JTF hired Neil Phillips (Phillips), an agricultural consultant employed by Rush, Marcroft and Associates, a firm specializing in forensic agronomy.

In June 1999, petitioner participated in a meeting (June meeting) with, among others, John Taylor, Phillips, Pellegri Jr., Don Giannecchini (Giannecchini), a representative of JTF, and Steve Bogetti (Bogetti), an owner of a packaging company. At the June meeting, Phillips and Bogetti estimated that the damage to the apricots on petitioners' farm was $105,000.

Between June and November of 1999, Mrs. Miller telephoned Giannecchini and other representatives of JTF and advised them that the Pellegris were not authorized to make a settlement on behalf of petitioners and that in the event of a settlement petitioners should receive the proceeds directly from JTF.

In November 1999, Pellegri Sr. visited petitioners at their home and informed them that he had negotiated a settlement with JTF concerning the damage to the apricots. Pellegri Sr. presented petitioners with a 4-page report written by Phillips, including a calculation that the total damage was $36,973, and a check dated November 1, 1999, for $11,091.90 (30 percent of $36,973). There were no restrictions or conditions on the face of the check. Pellegri Sr. told petitioners that the check represented their share of the settlement proceeds from JTF

concerning the damage to the apricots.  Petitioners expressed their disapproval but accepted the check.

On December 3, 1999, petitioners met with Phillips, Pellegri Jr., and Giannecchini.  Petitioners asked Phillips to explain why his final damage estimate was so much less than the estimate of $105,000 that he had made at the June meeting.  Phillips claimed that he had lost the notes that he had used in making the previous estimate.  Giannecchini informed petitioners that the Pellegris had executed a release of the claim against JTF but that he did not have a copy of the release for them at that time. Petitioners expressed their disapproval of any such release, and they reminded Giannecchini of their instruction to him that the Pellegris were not authorized to make a settlement on their behalf.

On December 7, 1999, Giannecchini brought to petitioners' home a copy of the release and a copy of the check from JTF payable to Pellegri Sr. for $36,973.  Both the release and the check were dated November 2, 1999.  The release provided in relevant part:

> In return for the payment of a total of $36,973.00, receipt of which acknowledged, Steve Pellegri and Sons hereby releases John Taylor Fertilizers Co./Wilbur-Ellis Co., Elf Atochem North America, their owners and employees, and their heirs, executors and assigns, from any claim of damages to their 1999 apricot crop, resulting from pesticide applications.

On December 9, 1999, petitioners contacted an attorney, Daniel McDaniel (McDaniel). McDaniel advised petitioners not to cash the check in order to prevent jeopardizing their legal position against JTF. On the basis of the information provided by petitioners, McDaniel believed that JTF had tendered the check to Pellegri in full and final payment for both the Pellegris' and petitioners' claims. McDaniel and petitioners calculated a claim that petitioners were entitled to $29,506.32 from JTF. In a letter to JTF dated December 16, 1999, McDaniel wrote:

> my clients are willing to accept payment of the sum of $29,506.32 in full and final settlement of all claims in this matter, provided that payment is made within fifteen (15) days. We are holding Steve Pellegri's check in the sum of $11,091.90, which can be credited to the $29,506.32 with the agreement of all concerned. This would leave a net of $18,414.42 due from your firm. * * * If payment is not made, however, our offer is withdrawn and we will proceed as deemed appropriate.

JTF did not immediately respond to the letter.

During the following months, McDaniel made several unsuccessful attempts to negotiate a settlement with JTF. In April 2000, petitioners stopped pursuing their claim against JTF and cashed the check. Their decision was based in part on McDaniel's advice against litigating and in part on petitioners' pressing need for the money.

Petitioners did not include the check as income on their 1999 Federal income tax return. Instead, in a footnote on that return petitioners disclosed receiving a payment of $11,091.90, but they explained that they were not reporting the payment as

income for 1999 because it was received "subject to dispute and possible litigation."

## Discussion

Section 451(a) of the Internal Revenue Code provides that the amount of any item of gross income shall be included in the gross income for the taxable year in which received by the taxpayer unless, under the method of accounting used in computing taxable income, that amount is to be properly accounted for in a different period. A taxpayer who reports income under the cash method of accounting must report income for the taxable year when it is actually or constructively received. Sec. 1.451-1(a), Income Tax Regs. Section 1.451-2(a), Income Tax Regs., defines constructive receipt as follows:

> Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions. * * *

Whether a taxpayer has constructively received income is essentially a question of fact. Childs v. Commissioner, 103 T.C. 634, 654 (1994), affd. without published opinion 89 F.3d 856 (11th Cir. 1996). We have long held that the doctrine of constructive receipt is to be applied sparingly and is to be invoked only when the taxpayer has an unrestricted right to

receive payment of money that is available to him.  Furstenberg v. Commissioner, 83 T.C. 755, 792-793 (1984); Basila v. Commissioner, 36 T.C. 111, 115-116 (1961) (citing Gullett v. Commissioner, 31 B.T.A. 1067, 1069 (1935)).

Ordinarily a check constitutes income to a cash basis taxpayer when he receives it.  See Walter v. United States, 148 F.3d 1027, 1029 (8th Cir. 1998); Estate of Kamm v. Commissioner, 349 F.2d 953, 955 (3d Cir. 1965), affg. T.C. Memo. 1963-344; Kahler v. Commissioner, 18 T.C. 31 (1952).  However, if a check is received subject to a substantial limitation or restriction, the check does not constitute income to a cash basis taxpayer. See Fischer v. Commissioner, 14 T.C. 792, 802 (1950); Bones v. Commissioner, 4 T.C. 415, 420 (1944); sec. 1.451-2(a), Income Tax Regs.  In Bones, we held that where cashing a check would impair a taxpayer's legal position by creating a situation that might be construed as an accord and satisfaction concerning a disputed claim, the taxpayer's refusal to cash the check did not result in constructive receipt.  Id. at 420.

The question of what constitutes an accord and satisfaction is not easily decided, and it is not essential to the disposition of this case to make any definitive holding as to whether cashing the check would have created an accord and satisfaction.  See id. Rather, the focus is on the reasonableness of petitioners' decision not to cash the check in light of the governing law

concerning accord and satisfaction.  See id.; Stoller v. Commissioner, T.C. Memo. 1983-319.  In Bones v Commissioner, supra at 420, we concluded that "the circumstances were such that petitioner could reasonably and prudently understand his position to be such that if he accepted the offer which was made upon the condition stated an accord and satisfaction would have resulted." A taxpayer's subjective belief, however, is irrelevant in determining whether the receipt of a check is subject to substantial limitations or restrictions (i.e., whether cashing it would have created an accord and satisfaction).  Fromson v. United States, 32 Fed. Cl. 1, 7 (1994).

Whether cashing a check would have created an accord and satisfaction is to be resolved under State law.  See id. at 7-8; Stoller v. Commissioner, supra (holding taxpayer in constructive receipt where taxpayer refused to cash a check purporting to represent final payment for services performed although under New York law, taxpayer could have cashed the check without impairing his claim by endorsing the check "without prejudice", "under protest", or the like).  Accordingly, whether petitioners constructively received $11,091.90 in 1999 turns on whether they had a reasonable belief that cashing the check would have impaired their claim against JTF under the law of the State of California.

California Uniform Commercial Code section 3311 (California

Code section 3311)(West 2002) provides in pertinent part:

Accord and satisfaction by use of instrument

(a) If a person against whom a claim is asserted proves that (1) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (2) the amount of the claim was unliquidated or subject to a bona fide dispute, and (3) the claimant obtained payment of the instrument, the following subdivisions apply.

(b) Unless subdivision (c) applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.

Subdivision (c) of section 3311, referred to above, does not apply here to prohibit discharge of the claim. According to the Uniform Commercial Code Comments, California Commercial Code section 3311 follows California's common law rule that cashing a check offered as full satisfaction of a disputed claim results in an accord and satisfaction, thereby precluding the payee from cashing the check and refusing to be bound by the condition. Cal. Commercial Code sec. 3311, comments 2, 3. (West 2002).

Whether California Commercial Code sec. 3311 applies to this case turns on whether the check or an accompanying written communication contained a conspicuous statement to the effect that the check was tendered as full satisfaction of the claim. Pellegri Sr. personally delivered the check to petitioners at their home. Although Pellegri Sr. informed petitioners that he had negotiated a settlement with JTF, there were no restrictions

or limitations on the check itself.  Petitioners received the check accompanied by Phillips's report, which explained the computation of the total damages.  About 3 weeks later on December 7, 1999, Giannecchini delivered to petitioners a copy of the release.  The release provided that in return for a payment of $36,973, receipt of which was acknowledged, Pellegri released JTF and its associates from any claim of damages to their 1999 apricot crop resulting from pesticide applications.  Although the release failed to mention petitioners and implied that the Pellegris were the owners of the apricots, it would have been reasonable for petitioners to believe that cashing the check might have discharged their claim against JTF under California Code section 3311.

Section 1207(a) of the California Commercial Code is identical to section 1-207 of the Uniform Commercial Code in effect in New York,  N.Y. Uniform Commercial Code Law sec. 1-207 (McKinney 1993), on which we relied in Stoller v. Commissioner, supra.  In the Stoller case we held the taxpayer in constructive receipt of income on receipt of a check even though the amount of the underlying obligation remained in dispute.  Section 1207(b) of the California Commercial Code states that "Subdivision (a) does not apply to an accord and satisfaction."  The law of California concerning accord and satisfaction on its face is

different from the law of New York, on which we relied in the Stoller case.

California Civil Code section 1526(c) (California Code section 1526(c))(West Supp. 2002) provides that "the acceptance of a check or draft by a creditor constitutes an accord and satisfaction when the check or draft is issued pursuant to or in conjunction with a release of a claim."  The reference to "release" in California Code section 1526(c) "must therefore contemplate a mutual understanding (not necessarily in writing) that was reached before the debtor issued the check containing the notation."  Dirs. Guild of Am. v. Harmony Pictures, Inc., 32 F. Supp. 2d 1184, 1189 (C.D. Cal. 1998) (emphasis added).  In Dirs. Guild of Am. the court stated that because the parties did not reach a mutual understanding before the issuance of the check, a letter that the debtor enclosed with the check stating that the check was "full and final payment and settlement of any and all contributions, interest, audit fees, and liquidated damages" did not constitute a release within the meaning of California Code section 1526(c).  Id. at 1186, 1189.[3]

Here, although there was no mutual understanding of a

---

[3]In Dirs. Guild of Am. v. Harmony Pictures, Inc., 32 F. Supp. 2d 1184, 1189 (C.D. Cal. 1998) the United States District Court concluded that relevant portions of California Civil Code sec. 1526 and California Commercial Code sec. 3311 are in conflict, and the court gave effect to the later-enacted Commercial Code sec. 3311.

release between JTF and petitioners before the check was issued, there may have been such a mutual understanding between JTF and the Pellegris prior to the issuance of the check.[4]  Petitioners reasonably could have believed that there was a mutual understanding between JTF and the Pellegris before the issuance of the checks to Pellegri Sr. and to petitioners and that the mutual understanding would be imputed to petitioners, thereby creating an accord and satisfaction under California Civil Code section 1526(c).

Although we believe that California Commercial Code section 3311, discussed above, states the California law relevant to this case, we note that the common law of California would govern if no statute applied.  Under the common law of California, the elements of accord and satisfaction are:  (1) A bona fide dispute between the parties; (2) a clear expression by the debtor that what he tendered was subject to the condition that it was to be in full satisfaction of the creditor's unliquidated claim; and (3) a clear understanding by the creditor when accepting what was

_____

[4]The release indicates that it was signed by Stephen Pellegri on 11/02/99 and for JTF on 11/03/99.  The check from JTF to Pellegri is dated 11/02/99.  The check from Pellegri to Roseann Miller is dated 11/01/99.  Neil Phillips's letter concerning the amount of the loss computation is undated, but a page of supporting data indicates fax transmission on 11/05/99. The record does not disclose the date of any oral agreement between the Pellegris and JTF.  The meeting between petitioners and Pellegri Sr., when Pellegri Sr. presented his check to petitioners and showed them Phillips's report, took place on 11/12/99.

tendered that the debtor intended such remittance to constitute payment in full of the particular claim in issue.  Thompson v. Williams, 259 Cal. Rptr. 518, 521 (Ct. App. 1989).

A writing is not essential to an accord and satisfaction; it may be implied.  Id.  Whether a transaction constitutes an accord and satisfaction depends on the intention of the parties as determined from the surrounding circumstances, including the conduct and statements of the parties, and notations on the instrument itself.  In re Marriage of Thompson, 48 Cal. Rptr. 2d 882, 887 (Ct. App. 1996).  A claim can be discharged by accord and satisfaction under California law even if a check is received without written or oral warning that the check is in full satisfaction of a claim if "the surrounding circumstances [are] sufficient to give * * * [the creditor] notice of that fact."  Keppard v. Intl. Harvester Co., 581 F.2d 764, 767 (9th Cir. 1978).  In the present case, although there was no restriction or limiting condition written on the check, the circumstances were sufficient to give rise to an inference that cashing the check might discharge the claim.  Petitioners received the check personally from Pellegri Sr., who informed them that he had negotiated a settlement with JTF concerning the damage to the apricots.  Pellegri Sr. gave them Phillips's report, which explained in detail how the damages were computed.  Petitioners subsequently were given a copy of the release.

Under California law knowledge of a creditor's agent may be imputed to the creditor to make an accord entered into by the agent valid where the creditor, with knowledge of the acts of the agent, accepts the remittance from the agent and uses the proceeds. B&W Engg. Co. v. Beam, 137 P. 624 (Cal. 1913). In B&W Engg.v. Beam, supra at 628, the court stated:

> if plaintiff's assignor was not willing to accept such payment in full satisfaction of its claim in keeping with the settlement made by Crowley it should, within a reasonable time, have repudiated such settlement and returned the money paid thereunder. * * * Failing in this the acceptance and retention of the payment in question was, under all the circumstances of the transaction, tantamount to an express ratification of the compromise made by Crowley, and operated to estop plaintiff's assignor from denying the authority of Crowley to execute such agreement.

Here, the lease agreement between petitioners and the Pellegris did not address potential claims against third parties. The Pellegris did not have express authority from petitioners to release JTF from liability to petitioners arising from the crop damage. Prior to the execution of the release, petitioners had notified Giannecchini that the Pellegris were not authorized to enter into a settlement on their behalf. Petitioners also retained counsel who advised them not to cash the check, apparently to avoid an accord and satisfaction. Under these circumstances, we conclude that there was reasonable basis for petitioners to believe that if, rather than repudiating the settlement by the Pellegris by returning the check or at least

continuing their protest, they had instead cashed the check, then an accord and satisfaction would have been created.

Under the circumstances of this case, there was substantial reason for petitioners to believe that an accord and satisfaction would have been created under California law if they had cashed the check here in question in 1999. The realistic possibility of an accord and satisfaction constituted a substantial limitation or restriction on the receipt of the proceeds. Therefore, petitioners were not in constructive receipt of the proceeds in 1999.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect petitioners' concession,

Decision will be entered

under Rule 155.